UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

ROBINELLE A. GENSLER,                             No. 15-10407 ta13

        Debtor.

### MEMORANDUM OPINION

Before the Court is a dispute about the value of Debtor's manufactured house. After hearing evidence, including expert testimony, and requiring the submission of supplemental evidence, the Court finds the house is worth $22,030.

### I.     FACTS[1]

The Court finds the following facts:

Debtor purchased the manufactured house, a 1999 Signal Beacon 56' x 28' (the "House") in February, 2005. She paid about $50,000 for the House, with a $3,000 cash down payment. She financed the balance at 6.75% interest, as evidenced by a retail installment contract. 21st Mortgage Corporation holds the retail installment contract and has a perfected first lien on the House, securing a debt of about $45,000.

The House has been moved at least twice. Most recently, Debtor moved it to her current address in Santa Rosa, NM. Debtor does not own the land upon which the House sits.

The House has significant deferred maintenance. The roof suffered hail damage and needs to be replaced or repaired. Large pieces of sheet rock are missing from the interior walls.

---

[1] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

The House has exposed insulation in the crawl space. There are substantial plumbing issues, as well as cosmetic issues such as broken cabinets, soiled carpet, and cracked windows.[2]

The Debtor filed this Chapter 13 case on February 25, 2015, followed by a proposed plan on March 13, 2015. She filed the motion to value the House shortly thereafter, alleging it is worth $16,000. In its response, 21st Mortgage alleged the House is worth approximately $27,000.

The Court held a final hearing on the motion to value on September 21, 2015. The Debtor and two experts testified.

The Debtor's expert, Nadine Chavez, opined the House was worth about $14,700. Her opinion was based on three resources: a "Residential Cost Handbook;" information from NADAguides.com on manufactured house values;[3] and individuals who finance and/or sell manufactured houses. She arrived at her figure by measuring the House and calculating about 1302 square feet of actual living space. Based on the Residential Cost Handbook, she determined a new manufactured house of similar quality would cost about $38.28 per square foot of living space, or a total of about $50,000. Ms. Chavez next deducted from that number an amount for depreciation. The figure she used was $7,800, which is equal to annual depreciation of 1.4% for 12 years.[4]

---

[2] The Debtor filed an insurance claim in January 2015 for the hail damage and received a check for $8,126.95. The check was payable to 21st Mortgage and the Debtor. 21st Mortgage asked the insurer to re-issue the check in 21st Mortgage's name only. 21st Mortgage currently is holding the insurance money, but says it will allow Debtor to use the funds to repair the House. Debtor has not made any repairs to date. The Court only rules on the value of the House, ignoring the value of the $8,126.95 cash collateral. The total value of 21st Mortgage's secured claim is reserved for plan confirmation.

[3] See the discussion about NADAguides.com value reports in Section F below.

[4] Ms. Chavez used 12 years rather than the actual age of the House (15-16 years) because of the House's condition.

Ms. Chavez next deducted her estimate of the costs to repair the house. The repair cost she came up with was $20,000, but Ms. Chavez admitted she had no expertise in estimating repair costs, so her figure was a "guesstimate."

Finally, Mr. Chavez deducted an additional $7,500 because the House had been moved several times. This meant, she opined, that a potential buyer could not obtain traditional financing, thus reducing the pool of potential buyers and the House's value.

21st Mortgage's expert, Jason Hendrickson, is the company's "Remarketing Manager" for the region that includes New Mexico. He opined that the House was worth $46,295. To arrive at this figure, Mr. Hendrickson relied on his experience selling manufactured houses that 21st Mortgage repossessed and resold in New Mexico, including at least seven 1999 model year manufactured houses of the same size (28' x 56'). These houses, he testified, sold for between $47,900 and $49,000. 21st Mortgage financed each of the sales. Mr. Hendrickson had no information about the value of any manufactured houses except for the ones he sold and financed.

Mr. Hendrickson estimated it would cost $10,205 to refurbish the House. The estimate was based on his experience preparing other repossessed houses for resale. Although Mr. Hendrickson's estimate seemed somewhat low (for example, the figure was based on repairs made at a dealer lot in Albuquerque, rather than on site in Santa Rosa), his opinion was more persuasive than Ms. Chavez, who merely guessed that the repairs would cost $20,000. The Court therefore finds it would cost $10,205 to repair the House.

Mr. Hendrickson estimated it would cost Debtor $8,600 to relocate a replacement house to her property, so he increased his estimate of value by this amount.

-3-

Mr. Hendrickson did not provide information about the seven comparable sales he relied upon and how they differed from, or were similar to, the House. Mr. Hendrickson could not explain why the House, in his opinion, was worth almost as much today as it was ten years ago, nor why his estimate exceeded by nearly $20,000 the value 21st Mortgage asserted in its response to the Debtor's valuation motion.

After the trial the Court asked the parties to submit information about the value of the House taken from NADAguides.com. The NADAguides.com "Value Reports" submitted by the parties are discussed in Section F below.

## II.  DISCUSSION

A. <u>Value Under § 506(a)(2)</u>. Both parties agree the House is personal property. To value personal property in a Chapter 13 case, the Court must use "replacement value … as of the date of the filing of the petition without deduction for costs of sale or marketing." § 506(a)(2). Because the House was acquired for "personal, family or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." *Id*.

B. <u>Valuation Date</u>. Courts disagree about whether personal property such as the House should be valued as of the petition date or the valuation hearing date. Compare *In re Morales,* 387 B.R. 36, 47 (Bankr. C.D. Cal. 2008) ("Value should be calculated as of the petition date, not the valuation hearing"), with *In Re Cook,* 415 B.R. 529, 533 (Bankr. D. Kan. 2009) (disagreeing with *Morales* and holding that valuation should be as of the valuation hearing date); *In re Byrd,* 2011 WL 2604765 (Bankr. D. Kan. 2009) (following Cook).

In this case, it makes no difference because there is no indication the value changed between the petition date and the date of the valuation hearing. The Court will therefore not rule

-4-
Case 15-10407-t13    Doc 53    Filed 10/23/15    Entered 10/23/15 18:08:05 Page 4 of 13

on the matter. *See, e.g., In re Labostrie,* 2012 WL 6554727, at *3 (9th Cir. BAP 2012) (recognizing the divergent views but holding that the date of valuation made no difference in that instance).

C. <u>Debtor Has the Burden of Proof</u>. Debtor's motion to value was brought in connection with confirmation of her Chapter 13 plan. Whether viewed as a separate contested matter, a claim objection, or as part of plan confirmation, the Debtor has the burden of proving that her proposed value for 21st Mortgage's secured claim is accurate. *See In re Alexander,* 363 B.R. 917, 921-22 (10th Cir. BAP 2007) (debtor had the burden of proving the § 1325(a) tests have been met); *In re Moffett-Roberts,* 2014 WL 1674331, at *3 (Bankr. D. Kan. 2014) (Chapter 13 plan proponent bears the burden of proof that her plan meets the statutory requirements for confirmation.).

D. <u>Costs of Moving the House Should Not be Considered</u>. It is expensive to move and set up a manufactured house after purchase, as well as to remove it when repossession is required. An important issue in valuing the House is whether such costs should be deducted from or added to the House's value.

The issue is resolved, at least in part, by the Supreme Court's ruling in *Associates Commercial Corp. v. Rash,* 520 U.S. 953 (1997). *Rash* held that replacement value, rather than foreclosure value, should be used when the debtor proposes to retain collateral, because such a rule gives effect to the second sentence of § 506(a)(1) ("such value shall be determined in light of . . . the proposed disposition or use of such property"). As the Supreme Court pointed out, replacement value reflects "the proposed repayment plan reality" instead of a hypothetical "foreclosure sale that will not take place…." *Id.* at 963.

Following *Rash* and the codification of its holding in § 506(a)(2), most courts have held that the value of a manufactured house should not be reduced by the cost to move it to a dealer lot for resale. *See In re Carlson,* 2006 WL 4811331 (Bankr. W.D. Wash. 2006) (The retail value of a mobile home "does *not* take into consideration moving costs. Rather, deducting the moving costs from the retail value results in the 'wholesale value.'") (emphasis in original); *In re Fortenberry*, 2014 WL 7407515, at *4 (Bankr. S.D. Miss. 2014) ("[T]he costs of removing and relocating the manufactured home to 21st Mortgage's lot should not be included in the value of the manufactured home for the purposes of § 506."); *In re Kollmorgen*, 2012 WL 195200, *4 n. 25 (Bankr. D. Kan. 2012) ("A deduction to the value of the manufactured home for the cost to move or relocate the manufactured home is unwarranted. No money value is added to the retail value to relocate or set the manufactured home.").

The Court agrees that the cost of removing and relocating a manufactured house should not be deducted from the value of the collateral. Since no repossession is proposed by the Debtor, repossession costs should not be reflected in the House's value.

Here, 21st Mortgage makes the opposite argument: since it would cost the Debtor about $8,500 to move and set up a replacement house, that cost should be added to the value of the House. The Court rejects the argument. For the same reasons debtors cannot deduct repossession/relocation costs from value, creditors cannot add delivery and set up costs to the value of their collateral. If value were added for moving costs, the increase would be based on a hypothetical replacement "that will not take place." *Rash,* 520 U.S. at 963.

Further, to the extent moving and set-up costs increased the House's value, the costs are analogous to accessions or add-ons upon which 21st Mortgage has no lien. *See Rash,* 520 U.S. at 965, n. 6 (creditors cannot "gain from modifications to the property-e.g., the addition of

accessories to a vehicle-to which a creditor's lien would not extend under state law."). 21st Mortgage would have to move the House to a dealer lot in the event of a default, so its lien does not extend to any value the Debtor might have gained by paying the cost of moving and setting up the House. *See also Rash,* 520 U.S. at 965, n. 6 (ancillary services provided by a dealer are not included in value); *In re Ebbler Furniture and Appliances, Inc.,* 804 F.2d 87, 92 (7th Cir. 1986) (Easterbrook, J., concurring) (services such as "storing, inspecting, displaying, hawking, collecting for, *delivering*, and handling warranty claims" are not included when "measure[ing]the creditor's claim for purposes of Chapter 13 cramdown") (emphasis added).

The Court therefore concludes that when the proposed disposition is to keep a mobile home at its current location, *Rash's* rationale indicates that all moving costs, whether increasing or reducing value, should be disregarded.

　　　　E.　　Appraisal Testimony.

　　　　　　1.　　Debtor's Expert Testimony. Ms. Chavez has experience appraising manufactured homes and opining about value. However, her appraisal methodology in this case had some problems. First, her cost figure for necessary repairs ($20,000) was only a guess. Second, there was no evidence to support Ms. Chavez' assertion that the value of the House should be lowered by $7,500 because—due to the fact the House had been moved more than once—potential buyers could not get bank financing. Finally, Ms. Chavez should have deducted 16 years of depreciation, which is the age of the House.

Overall, while Ms. Chavez' general valuation method was understandable (*i.e.* cost of a new house, less depreciation, less repairs), her figures and deductions made the appraisal less helpful than it otherwise would have been.

-7-

2. <u>21st Mortgage's Expert Testimony</u>. Much of 21st Mortgage's expert opinion testimony also had problems. First, the testimony was from an interested employee. *See, e.g., In re Cline,* 275 B.R. 523 (Bankr. S.D. Ohio 2001) (discounting testimony of creditor's appraiser/employee because of his lack of independence). Second, Mr. Hendrickson increased his estimate of value by $8,600 for moving expenses. As discussed above, such expenses should not be included. Third, Mr. Hendrickson's value was based on the assumption that 21st Mortgage would be both seller and financer. Combining the roles of seller and lender makes the estimated value inherently unreliable, because the party could increase the sales price to provide a lower interest rate, and vice versa. Also, unlike a traditional third party lender, 21st Mortgage does not independently assess value before closing the loan.

Fourth, Mr. Hendrickson increased his estimate to include certain "upgrades" that did not appear to add value to the House, including a stick-on vinyl (rather than tile) backsplash in the kitchen, crown molding (installed by Debtor from trim they bought at a home improvement store), and a wall mural (a decal purchased by Debtor and installed herself). Finally, Mr. Hendrickson's opinion of value was 71% higher than the value 21st Mortgage asserted in its response to the Debtor's motion to value ($27,000).

On the other hand, as explained above Mr. Hendrickson's estimates about repairs were helpful to, and adopted by, the Court.

F. <u>NADAguides.com Value Reports</u>.

1. <u>Valuation Using the NADAguides.com</u>. Using NADAguides.com to value manufactured houses is an accepted practice in bankruptcy court. *See, e.g., In re Kollmorgen*, 2012 WL 195200 (Bankr. D. Kan. 2012); *In re Tucker*, 2013 WL 3230615, at *6 (Bankr. M.D. Ga. 2013) (NADA values and comparable sales both provide probative evidence of

value); *In re Coleman*, 373 B.R. 907, 912 (Bankr. W.D. Mo. 2007) (NADA values is an appropriate starting point for valuation); *In re Carlson,* 2006 WL 4811331, *2 (Bankr. W.D. Wash. 2006) (noting that the NADA appraisal guide "is of some assistance to the Court since it takes into account the size and condition of the [m]anufactured [h]ome, as required by 11 U.S.C. § 506(a)(2)").

The value given by NADAguides.com represents the depreciated replacement cost of the home and added features in retail dollars, and does not appear to include adjustments for land, location, or comparable sales.

Valuing manufactured houses using a NADAguides.com valuation is not without its difficulties. *See, e.g., In re Arendarczyk,* 2014 WL 6629770, at *5 (Bankr. S.D. Ga. 2014) (NADA guide book value for a manufactured home does not represent the value of the home based on multiple actual sale transactions, but rather a "Depreciated Replacement Cost in Retail Dollars"). As one court pointed out, the NADA guide must be used with caution and is not conclusive because it is "unable to account for the myriad of facts that may be peculiar to a debtor's particular property." *In re Meredith,* 2013 WL 4602966, *3 (Bankr. M.D. Pa. 2013) (internal quotations omitted).

Some courts have preferred comparable sales values rather than values based on the NADA guide. *See, e.g., Arendarczyk,* 2014 WL 6629770, at *5 (court found expert value opinion more reliable than value derived from NADA guide); *In re Tucker,* 2013 WL 3230615, at *6 (Bankr. M.D. Ga. 2013) (appraisal that used actual sales of houses was more reliable than value based on NADA guide). However, there are difficulties with appraisals based on comparable sales of on-site manufactured houses, both because they often involve the

simultaneous sale of real property (it is not always easy to separate the two values) and because they can reflect the moving and set-up costs, which the creditor usually cannot realize.

Under the circumstances of this case, the Court finds it is appropriate to use NADAguides.com as a starting point for value.

2. <u>Submission of Post-Trial NADAguides.com Value Reports</u>. After trial, at the Court's request each party submitted a NADAguides.com "Value Report" for the House. The Debtor's report indicated a value of $15,618, while 21st Manufacturing's "good condition" report shows a value of $35,241.[5]

The NADAguides.com value reports start with a "floor" value, based on the make, model, size, and year of the house. The floor value is then adjusted based on the condition of the house (fair, good, or excellent), its location, and on the number of "upgrades" the house has.

a. <u>Floor Value</u>. For reasons unknown, the parties' reports start with different floor values, $19,057 (21st Mortgage) versus $15,001 (Debtor). Both reports use manufactured homes of the same year, make, and size. The only difference is that 21st Mortgage's report has a "chart" code of 308, while the Debtor's report has a chart code of 318. It is unclear what a chart code is. However, the Court notes that the Debtor's original NADA report submitted at trial has a chart code of 308; the floor value in that report ($18,832) is closer to 21st Mortgage's floor value. For that reason, and because 21st Mortgage's floor value is closer to the starting point used by both experts, the Court will use 21st Mortgage's floor value, as adjusted for location. The location-adjusted floor value is $19,438.

b. <u>Condition</u>. 21st Mortgage submitted "excellent condition" and "good condition" valuation reports, and the Debtor submitted a "fair condition" valuation report.

---

[5] As discussed below, the Court did not rely on the "excellent condition" report submitted by 21st Mortgage.

Based on the evidence, the Court finds that "good condition"[6] will best describe the House after the necessary repairs are made.[7]

        c.    <u>Upgrades</u>. The NADAguides.com reports differ with respect to the House's "upgrades." The Court has analyzed each upgrade in each report.

        i.    <u>Upgrades in Both Reports</u>. The parties agreed on $1,666 of upgrades.[8]

        ii.    <u>Upgrades only in the Debtor's Report</u>. $2,171 of upgrades were admitted to by the Debtor but not included in 21st Mortgage's report. The Court included them in its valuation of the House.

        iii.    <u>Upgrades only in 21st Mortgage's Report</u>. The Court included upgrades that are only in 21st Mortgage's report, if there was supporting evidence in the record:

| Proposed upgrade | Value | Allowed? | Evidence supporting the upgrade? |
|---|---|---|---|
|  |  |  |  |
| Carpeting throughout home (including kitchen and bathroom) | $392 | No | The records shows there are hardwood floors in the master bathroom. 21st Mortgage's report includes a hardwood flooring upgrade. |
| Electrical – 100 amp main | $83 | No | None. |
| Fan – kitchen stove exhaust wall fan. | $78 | No | None. |
| Flooring – hardwood flooring, 140 sq. ft. | $694 | Yes | There is some hardwood flooring in the House, including in the master bathroom. |
| Flooring – 1/2" rebond carpet pad. | $90 | No | None. |
| House-type roofing – multi- | $1,234 | Yes | Several witnesses identified the tin roof as |

---

[6] Good condition, according to 21st Mortgage's Value Report, is "normal wear and tear visible, but home is well maintained, still attractive, desirable and useful."

[7] The parties agree that in assessing value, the Court should deduct costs for necessary repairs. The alternative would be to value the House "as is" and assume no repairs will be made.

[8] If the parties disagreed about the number of upgraded items (for example, fans), the Court used the Debtor's number. Beyond the Debtor's admissions, there was insufficient evidence about the number of upgrades.

| | | | |
|---|---|---|---|
| wide | | | an upgrade to the House. |
| House type siding – multi-wide. | $661 | No | None. |
| Kitchen appliances – refrigerator. | $315 | No | There is no evidence about a refrigerator upgrade. |
| Kitchen appliances – cook top and oven (built-in). | $309 | Yes | There are pictures of the stove in evidence. |
| Plumbing – plumb for washer | $76 | Yes | Debtor testified about a laundry room. |
| Plumbing – single lever faucet | $36 | No | None. |
| Plumbing – sink kitchen double bowl | $24 | No | None. |
| Plumbing – stainless steel sink. | $92 | No | None. |
| Plumbing – water shut-off valve. | $60 | No | None. |
| Retrofit roof – contractor installed. | $3,528 | Yes | The roof was upgraded to metal/tin. Proposed repairs include replacing or repairing much of the metal roof. |
| Windows – dual glazed windows, multi-wide. | $592 | Yes | The Debtor testified there is moisture between the double pane windows. |
| Insulation upgraded packages | $637-$1,421 | No | The House clearly has floor insulation, but no evidence about upgraded insulation. |
| Total allowed | | | $6,433 |

The total upgrades that should be allowed is $10,270 ($1,666+$2,171+$6,433).

               d.      <u>Repairs</u>.  Based on Mr. Hendrickson's testimony, it would cost $10,205 to repair the House.  As explained above, the Court will not increase the value by the amount of the insurance check.

Based on the NADAguides.com value reports, the net value of the House would be:

| | |
|---|---|
| Location Adjusted Floor Value | $19,438 |
| Condition adjustment (13% of Floor Value) | $ 2,527 |
| Upgrade Adjustment ($1,665.88+$2,170.76+$6,433) | $10,270 |
| Repair Cost | ($10,205) |
| Net Value | $22,030 |

Considering all of the record, the Court concludes that the best evidence of the House's value are the NADA value guides, with the adjustments outlined above.

### III.    <u>CONCLUSION</u>

The Court rules that the House is worth $22,030.  A separate order will be entered.

_____

Hon. David T. Thuma
United States Bankruptcy Judge

Entered: October 23, 2015

Copies to:

Christopher L. Trammell
3900 Juan Tabo NE
Albuquerque, NM 87111

Susan P. Crawford
210 Montezuma Ave., Ste. 200
Santa Fe, NM 87507

Kelley L. Skehen
625 Silver Ave. SW
Albuquerque, NM 87102